**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MIA FEROLETO**,

                        **Plaintiff,**            **1:08-cv-554**
                                               **(GLS\RFT)**

          **v.**

**MICHAEL JUDE O'CONNOR,**

                        **Defendant.**
_____

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Mia Feroleto
Pro Se
1748 Bayley-Hazen Road
East Hardwick, VT 05836

**FOR THE DEFENDANT:**
Smith, Sovik Law Firm          KEVIN E. HULSLANDER, ESQ.
250 South Clinton Street, Suite 600
Syracuse, NY 13202-1252

**Gary L. Sharpe**
**District Court Judge**


## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Mia Feroleto commenced this action against defendant

Michael Jude O'Connor, asserting claims for legal malpractice and breach

of contract.  (*See* Compl., Dkt. No. 1.)  Pending is O'Connor's motion for

summary judgment.  (Dkt. No. 35.)  For the reasons that follow, O'Connor's

motion is granted and Feroleto's complaint is dismissed.

## II. Background

### A.   Factual History[1]

Defendant Michael Jude O'Connor is an attorney licensed to practice

law in New York State, is admitted to practice in the state and federal

courts of New York, and is a board certified commercial and consumer

bankruptcy specialist.  (*See* Def. SMF ¶¶ 1-3, Dkt. No. 35:1.)  Plaintiff Mia

Feroleto first met with O'Connor in June 2005 regarding her unpaid real

property taxes and mortgage arrears, among other debts.  (*See id.* at ¶ 5;

*see also* Feroleto Dep. at 23, Dkt. No. 35:5.)  After being informed by

Feroleto that the Deutsche Bank, as mortgagee of her house, had

scheduled a July 2005 foreclosure sale of her house, O'Connor advised

---

[1]The facts are largely derived from defendant O'Connor's statement
of material facts, (*see* Dkt. No. 35:1), which plaintiff Feroleto has failed to
respond to in any meaningful way, despite being notified by the court of
the requirements under the Local Rules and being given additional time to
respond, (*see* Nov. 16, 2010 Text Order).  To the extent the court is able
to glean a material factual dispute from Feroleto's submissions and
deposition testimony, it will do so.  However, where otherwise appropriate,
the court will deem admitted any facts set forth by O'Connor that Feroleto
has not specifically controverted.  *See* N.D.N.Y. L.R. 7.1(a)(3).

Feroleto that she may be able to prevent the foreclosure for a certain period of time by filing for bankruptcy and making monthly post-petition mortgage payments and chapter 13 plan payments beginning in August 2005. (*See* Def. SMF ¶¶ 6-10, Dkt. No. 35:1.)  Feroleto assured O'Connor that she could obtain a monthly income of $6,000 by selling her valuable art antiques and collectibles, and thereby meet the post-petition mortgage payments and Chapter 13 plan payments.  (*See id.* at ¶ 11.)  Based on these assurances, O'Connor agreed to represent Feroleto in bankruptcy, with an agreed upon fee of $1,990.[2]  (*See id.* at ¶¶ 12-13.)

On July 7, 2005, O'Connor filed Feroleto's bankruptcy petition with the United States Bankruptcy Court of the Northern District of New York. (*See* Hulslander Aff., Ex. J, Dkt. No. 35:12.)  Included in her petition was Feroleto's estimated income of $6,000 per month.  (*See id.* at 22.) Pursuant to Feroleto's chapter 13 filing, the foreclosure sale was stayed. (*See* Def. SMF ¶ 18, Dkt. No. 35:1.)  On July 25, 2005, Deutsche filed a proof of claim for $550,624.27.  (*See id.* at ¶¶ 19-21.)  The proof of claim showed mortgage arrears of $80,491.04, with payment defaults dating

---

[2]In the end, O'Connor only received approximately $200 for the services and representation he provided to Feroleto over the course of two and one-half years.  (*See* Def. SMF ¶ 14, Dkt. No. 35:1.)

back eighteen months to January 2004.  (*See id.* at ¶ 22.)  In addition, as a result of Feroleto's failure to pay real property taxes since January 2003, Columbia County filed a proof of claim showing property tax arrears of $22,958.85.  (*See id.* at ¶¶ 23-25.)

Pursuant to Feroleto's petition and the Bankruptcy Court's confirmation order, Feroleto was obligated to make thirty-six monthly payments of $250.00 to Andrea Celli, Esq., the assigned Trustee.  (*See* Hulslander Aff., Ex. J, Dkt. No. 35:12.)  Feroleto made one monthly payment to the Trustee on August 10, 2005, but failed to make any subsequent payments.  (*See* O'Connor Aff. ¶ 14, Dkt. No. 35:20.)  Feroleto further failed to make any post-petition mortgage payments to Deutsche, which from July 2005 to October 2005 amounted to $16,663.31.  (*See id.* at ¶ 11.)

On October 3, 2005, Feroleto filed a motion with the Bankruptcy Court, seeking approval to sell a 7.943 acre parcel of her mortgaged property.  (*See* O'Connor Aff., Ex. I, Dkt. No. 35:29.)  In response to Feroleto's motion, and due to Feroleto's failure to make her mortgage payments, Deutsche filed a motion for relief from the automatic stay of foreclosure on October 4, 2005.  (*See* O'Connor Aff., Ex. F, Dkt. No.

35:26.)  Then, on November 4, 2005, the Trustee moved to dismiss Feroleto's bankruptcy case due to her material default on her chapter 13 plan payments.  (*See* O'Connor Aff., Ex. H, Dkt. No. 35:28.)  O'Connor, as Feroleto's counsel, managed to reach a stipulation with Deutsche, whereby Feroleto was given until December 15, 2005, to bring her loan current.  (*See* O'Connor Aff., Ex. G, Dkt. No. 35:27.)  In addition, O'Connor worked with the Trustee to forestall dismissal of Feroleto's case.  (*See* Celli Aff. ¶¶ 26-27, Dkt. No. 35:9.)

On December 16, 2005, the Bankruptcy Court granted Feroleto's motion and issued a sale order allowing Feroleto to sell the parcel.  (*See* Dec. 16, 2005 Bankr. Order, Dkt. No. 35:29.)  Under the sale order, Feroleto was ordered to turn over all sale proceeds—minus unpaid real property taxes and any reasonable and necessary closing costs—to Deutsche.  (*See id.* at 2.)  Scott Longstreet, Esq.—who had been representing Feroleto during the foreclosure proceedings, and who recommended O'Connor to Feroleto—represented Feroleto in the parcel sale.  (*See* Feroleto Dep. at 23-25, Dkt. No. 35:5.)  On January 3, 2006, Longstreet closed on the sale of the parcel.  Feroleto informed O'Connor and Longstreet that she wished to divert the parcel sale funds to pay her

unsecured creditors and keep any remaining surplus for her own use.  (*See* Hulslander Aff., Ex. L, Feroleto Emails, Dkt. No. 35:14.)  However, based on prior conversations with O'Connor—who advised Longstreet to turn over the proceeds to the Trustee in accordance with the Bankruptcy Court's sale order, (*see* O'Connor Aff., Ex. J, O'Connor Dec. 21, 2005 Email, Dkt. No. 35:30)—Longstreet delivered to the Trustee $74,553.06, which represented the net proceeds of the parcel sale after payment of back and current taxes, closing costs, and other related fees.  (*See* Hulslander Aff., Ex. K, Longstreet Jan. 6, 2006 Letter, Dkt. No. 35:13.)

On February 3, 2006, Deutsche issued a notice of default based on Feroleto's continued failure to make her mortgage payments and her failure to meet her obligations under the stipulation.  (*See* Hulslander Aff., Ex. M, Dkt. No. 35:15.)  Consequently, the Bankruptcy Court lifted the stay, which opened the door for Deutsche to commence foreclosure.  (*See* Hulslander Aff., Ex. N, Dkt. No. 35:16.)  And on August 30, 2006, Feroleto's house was sold at foreclosure for $400,000, which was $118,546.14 less than the actual value of the mortgage lien.  (*See* Def. SMF ¶¶ 58-59, Dkt. No. 35:1.)

According to a letter sent by Deutsche's counsel to Feroleto, O'Connor, and Longstreet on February 20, 2007, the Trustee, despite

having received the proceeds of the parcel sale, failed to turn over the proceeds to Deutsche pursuant to the Bankruptcy Court's sale order.  (*See id.*)  Shortly before receiving this letter, O'Connor notified the Trustee that Deutsche had not received the sale proceeds as required by the sale order.  (*See* Celli Aff. ¶ 16, Dkt. No. 35:9.)  Longstreet likewise contacted the Trustee regarding the distribution of the parcel sale proceeds.  (*See id.* at ¶ 18.)  Accordingly, the Trustee filed a motion with the Bankruptcy Court for an order directing how the proceeds should be disbursed.  (*See* O'Connor Aff., Ex. M, Dkt. No. 35:33.)  On June 18, 2007, the Bankruptcy Court ordered that the parcel sale proceeds be disbursed to Deutsche in accordance with the sale order's terms, and rejected Longstreet's contention that the funds should be distributed to Feroleto's unsecured creditors.  (*See id.*)

On September 17, 2007, upon a motion filed by O'Connor, (*see* O'Connor Aff., Ex. N, Dkt. No. 35:34), the Bankruptcy Court permitted Feroleto to modify her chapter 13 plan by, inter alia, altering her payment amounts and schedule and by waiving all post-petition, pre-modification plan payment default.  (*See* O'Connor Aff., Ex. O, Dkt. No. 35:35).  Feroleto never made any payments on the modified plan.  (*See* O'Connor

Aff. ¶ 28, Dkt. No. 35:20.)

At some point after commencing her bankruptcy case, Feroleto engaged the services of a storage company in order to remove her possessions from her house prior to the foreclosure.  (*See* Feroleto Dep. at 139-42, Dkt. No. 35:5.)  However, Feroleto did not notify O'Connor that she had entered into a storage agreement until after the foreclosure sale occurred.  (*See id.*)  Specifically, in October 2007, Feroleto advised O'Connor that all her possessions were in storage, that she had defaulted on her storage payments, and that she was in danger of losing her possessions to a sale if she could not make the storage payments.  (*See id.*; *see also* O'Connor Aff. ¶¶ 28-29, Dkt. No. 35:20.)  Notwithstanding the fact that Feroleto violated the chapter 13 plan by incurring additional debt, O'Connor filed a motion with the Bankruptcy Court to temporarily waive her plan payments, which was granted to allow Feroleto to pay her storage fees.[3]  (*See* O'Connor Aff., Ex. Q, Dkt. No. 35:37.)  Still, Feroleto never

---

[3]Feroleto, also without O'Connor's knowledge, further violated her chapter 13 plan by entering into a financed purchase agreement for a Mercedes Benz vehicle.  (*See* O'Connor Aff. ¶ 30, Dkt. No. 35:20; Feroleto Dep. at 149-50, Dkt. No. 35:5.)  And again, O'Connor managed to obtain the Bankruptcy Court's approval for Feroleto's sale of the vehicle.  (*See* O'Connor Aff., Ex. R, Dkt. No. 35:38.)

made her storage payments.  (*See* Feroleto Dep. at 149-50, Dkt. No. 35:5.)
As a result, the storage company sold Feroleto's possessions.  (*See id.* at
139.)

On April 2, 2008, the Bankruptcy Court granted a motion filed by
O'Connor to be relieved as Feroleto's counsel based on, among other
things, Feroleto's alleged "represent[ation] to the [Bankruptcy] Court that a
statement was attributed to [O'Connor that was] ... untrue."  (O'Connor Aff.,
Ex. S, Dkt. No. 35:39.)  At that point in time, Feroleto was almost three
years in default on her chapter 13 plan payments.  Ultimately, Feroleto
converted her chapter 13 case to a chapter 7 case, and received a
discharge of her debts.  (*See* O'Connor Aff., Ex. T, Dkt. No. 35:40.)

**B.**   **Procedural History**

On April 30, 2008, Feroleto filed suit against O'Connor in New York
State Supreme Court, Albany County, seeking to recover damages under
New York law for O'Connor's alleged legal malpractice and breach of
contract.  (*See* Compl., Dkt. No. 1.)  On May 23, 2008, the action was
removed to the United States District Court for the Northern District of New
York based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  (*See*
Notice of Removal, Dkt. No. 1.)  O'Connor moved for summary judgment

9

on September 15, 2010.  (Dkt. No. 35.)

### III.  Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

### A.    Legal Malpractice

"To prevail on a claim for legal malpractice under New York law, a plaintiff must establish: (1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages."  *Nordwind v. Rowland*, 584 F.3d 420, 430 (2d Cir. 2009) (internal quotation marks, citation, and emphasis omitted).  "An attorney is negligent if ... he failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession."  *Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  "However, an attorney is not held to the rule of infallibility and is not liable for an honest mistake of judgment where the proper course is open to reasonable doubt."  *Bernstein v. Oppenheim & Co.*, 160 A.D.2d 428, 430 (1st Dep't 1990) (citation

10

omitted).  Nor does "selection of one among several reasonable courses of action ... constitute malpractice." *Rosner v. Paley*, 65 N.Y.2d 736, 738 (N.Y. 1985) (citations omitted).  "To establish the elements of proximate cause and damages, a plaintiff must show that but for the defendant's negligence, ... she would have prevailed in the underlying action or would not have sustained any damages." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005) (internal quotation marks and citation omitted). Thus, "the plaintiff must show that the attorney's breach of [his] professional duty caused the plaintiff's actual damages." *McCoy v. Feinman*, 99 N.Y.2d 295, 301-02 (N.Y. 2002) (citations omitted).

Here, Feroleto has failed to provide any evidence—including expert testimony—establishing that O'Connor's conduct fell below the ordinary reasonable skill and knowledge commonly possessed by a member of his profession.  Meanwhile, O'Connor has marshaled a series of evidence, including expert opinions, to demonstrate that his conduct was entirely reasonable and consistent with his legal obligations.  (*See* Peter A. Pastore, Esq. Expert Report at 4-5, Dkt. No. 35:10 ("[I]it is my professional opinion that no malpractice was committed by Mr. O'Connor in the drafting of the Sale Order....  [I]t was entirely reasonable for Mr. O'Connor to direct

delivery of [the parcel sale] funds to the Chapter 13 Trustee.  Accordingly, Mr. O'Connor's direction was not negligent and was within the standards of care an attorney would utilize."); Celli Aff. ¶¶ 25, 28, 30, Dkt. No. 35:9 ("I believe that Mr. O'Connor acted competently, reasonably and appropriately in protecting his client's best interest during the pendency of the bankruptcy case....  [I]t is my opinion that Mr. O'Connor made reasonable arguments in favor of his position that the funds held by me be distributed under the plan given the circumstances presented....  Mr. O'Connor handled this matter reasonably and competently throughout and did not deviate from representing [Feroleto's] interests at any times."); Longstreet Dep. at 43, Dkt. No. 35:7 ("It would have made no sense to sell [the parcel] and then have the money go to the bank.  That's why it made all kinds of sense to me when [O'Connor] said it goes to the [T]rustee....  [O]f course it d[id]; otherwise, why [did] we do[] the sale.").)  Even in this court's opinion, it was reasonable for O'Connor to recommend that Longstreet transmit the parcel sale proceeds to the Trustee for her to resolve any questions about proper distribution.  As O'Connor himself points out, "plac[ing] the sale proceeds with the Trustee was not only a reasonable course of action, but was the *only* course of action that could have protected the legal rights of

12

[Deutsche] under the terms of the Sale Order, while still leaving [Feroleto] a chance (albeit a slight chance) to potentially recover some of the money." (Def. Mem. of Law at 12, Dkt. No. 35:41.)  Thus, there is nothing in the record to suggest that O'Connor's actions were unreasonable or inappropriate regarding his overall representation of Feroleto or regarding individual actions taken or decisions made to ensure his and his client's compliance with the Bankruptcy Court's orders and directives.

Alternatively, even were the court to unearth a material factual dispute on the issue of negligence, Feroleto would still be unable to establish causation.  Specifically, she has failed to show any nexus between O'Connor's actions and her losses.  Instead, Feroleto premises her claim on speculation alone, namely, that if had she transferred the parcel sale proceeds to Deutsche, then it would not have foreclosed on her house.[4]  Such an unsupported, speculative assertion is not enough to establish proximate or actual cause, and is wholly controverted by the

---

[4]Incredulously, Feroleto now claims that the parcel sale proceeds should have been transferred directly to Deutsche, despite the fact that the evidence generally establishes that at the time she wished to divert the proceeds to, among other things, pay her unsecured creditors, which would have clearly violated both the sale order and Deutsche's legal rights.

13

record.  (*See* Pastore Report at 5, Dkt. No. 35:10 ("[The] contention that

[Deutsche] would have ceased the foreclosure action is pure speculation

and is contrary to the facts and the background of this case....  While there

was a delay in disbursing the funds, no damage was occasioned by the

delay....  Mr. O'Connor is not at fault for the foreclosure of [Feroleto's]

residence."); *see also* Robert Rock, Esq. Aff. ¶ 10, Dkt. No. 35:8 ("Based

on my review of the docket and my file, together with my experience as

[Deutsche] counsel, I believe to a reasonable degree of certainty that even

had the proceeds of the [parcel] sale been turned over to [Deutsche] in

January 2006, [it] would still have made every effort to foreclose on the

property. [Feroleto] had not made any mortgage payments on the property

for many months, was in serious default under the terms of the mortgage

and any turnover of proceeds had it been made would not have cured the

default or changed [Deutsche's] chosen course of action.").)

     Lastly, to the extent Feroleto contends that O'Connor is responsible

for the loss of her personal property that resulted from the storage

company's sale, such a contention is legally and factually baseless.  First,

Feroleto engaged the storage services in violation of the plan and without

O'Connor's knowledge or consultation.  Second, O'Connor promptly and

successfully moved the Bankruptcy Court to suspend Feroleto's plan payments to allow her to satisfy the storage fees, which she inevitably failed to do.  Thus, the court rejects Feroleto's claim that the actions taken by O'Connor after learning of her misconduct amounted to malpractice. (*See* Pastore Report at 5-6, Dkt. No. 35:10 ("Mr. O'Connor did not commit attorney malpractice regarding [Feroleto's] loss of her personal property.... [Feroleto's] failure to pay her post-petition storage fees and the resulting loss of her personal property is not the fault of Mr. O'Connor.").)

In sum, as Feroleto has failed to proffer an arguable factual basis upon which a reasonable jury could find in her favor with regard to any element of her legal malpractice claim, the court grants O'Connor's motion for summary judgment on Feroleto's legal malpractice claim.

## B. **Breach of Contract**

Because there is no evidence or allegation that O'Connor promised a particular or assured result or otherwise promised to go beyond his duties of legal representation, the court dismisses Feroleto's breach of contract claim as entirely duplicative of her legal malpractice claim.  *See PPX Enters., Inc. v. Fredericks*, 5 F. App'x 25, 28 (2d Cir. 2001) ("Under New York law, when the alleged breach of a retainer agreement is a 'breach of

15

general professional standards' and not a breach of a particular action or

promised result, then the breach of contract claim is duplicative of the legal

malpractice claim and viewed as a redundant pleading." (citation omitted));

*see, e.g.*, *Diamond v. Sokol*, 468 F. Supp. 2d 626, 640 (S.D.N.Y. 2006);

*Ideal Steel Supply Corp. v. Beil*, 55 A.D.3d 544, 546 (2d Dep't 2008);

*Senise v. Mackasek*, 227 A.D.2d 184, 185 (1st Dep't 1996); *cf. Nordwind*,

584 F.3d at 432-33 ("[W]here a claim for breach of fiduciary duty is

premised on the same facts and seeking the identical relief as a claim for

legal malpractice, the claim for fiduciary duty is redundant and should be

dismissed." (internal quotation marks and citation omitted)).

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that O'Connor's motion for summary judgment (Dkt. No.

35) is **GRANTED** and Feroleto's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties by regular and certified

mail.

**IT IS SO ORDERED.**

May 6, 2011

Gary L. Sharpe
U.S. District Judge

16

Albany, New York